Wickham, J.
(orally).
It seems that probably in the spring, or, at any rate, before the time in May when Martin Slough was adjudged insane, he entered into an agreement with the plaintiff, Nessley, by which it was agreed that Nessley should cut the grass upon his farm that summer; and that he was to have one-third of the hay for doing the work; two-thirds belonged to Martin Slough. The land belonged at that time to Martin Slough, and in May he was adjudged insane in the probate court of this county, and was sent to the state hospital for the insane at Columbus, and about the same time, probably, his wife was appointed guardian of the property.
The plaintiff, Nessley, under the agreement made with Slough before he was sent to the hospital, cut the grass and made -the hay and put it. in the barn. He was then the owner of the undivided one-third of the hay. The other two-thirds of the hay *60 belonged to Martin Slough, and in the fall on an application made, the policy of insurance upon which this suit is brought was issued to Melissa Slough and Nessley, in their individual capacities.
On the last day of September of that year, or the first of October, the barn and the contents were destroyed by fire. This action was brought by Melissa Slough and Arlington C. Nessley, in their individual capacities, to recover upon that insurance. Suit was brought nearly a year from the time of the fire — September, 1904.
In the meantime, the evidence shows that Martin Slough had recovered from his illness, and the disability of guardianship was removed; and so, at the time that this suit was brought, Melissa Slough was not the guardian of Martin Slough.
The question is, whether Melissa Slough can recover upon that policy in this action, in her individual capacity.
Counsel cite two cases which they say are in point. I have examined them, and can not see how they are in point, or apply to this lawsuit. One of the cases is reported in the 13 Circuit Court Reports, page 679, entitled, Phillips v. Ohio Farmers’ Insurance Company. The language of the court in the decision of the case, to which our attention is called, reads:
“In regard to the bringing of the suit, that was brought in the name of Louis Phillips. It is shown in evidence that subsequent to the making of the policy the property had been conveyed to Margaret Phillips. That is not denied in the reply. Evidence was offered to show that the conveyance was made in trust for the plaintiff, Louis Phillips. It was claimed in testimony that Louis Philips had become perhaps weak in mind, or his faculties a little impaired, and for the purpose of protect-ting the property, under the advice .of counsel, the legal title of the property was placed in the name of Mrs. Phillips and in trust for Louis Phillips, who was in fact the real owner of the property.
“That particular fact was not set up in the reply. We think, of course, it ought to have been, because it is a very material and important matter; but we think, from that state of facts, that the plaintiff could have the right to commence an action, if he chose, in his own name. It is true that under Section 4995 an executor, administrator or guardian, a trustee of an express trust, may bring an action in his own name without joining with the other party.”
*61 This case was not similar to the case before usi. There Louis Phillips had obtained á policy of insurance on the property which he owned; he became weak in mind, and he conveyed the property to his wife, in trust for himself; and, after the loss, he brought an action in his own name against the company, and it was held that he could do so. But he was the real party in interest. ITe was the real owner of the property, and his wife simply held the legal title, as trustee for him. But that is not this case. It does not appear that Melissa Slough had any interest whatever in this property, or bad at the time that she brought the action. The loss accrued to Martin Slough, or to his estate. Before the action was brought Melissa Slough ceased to be his .guardian, and the relation of guardian and ward terminated, and he was not under the disability of guardianship. She had no interest, either individually or as trustee, in any manner in which that term may be used. We can see no reason why if an action could be maintained by her, and a judgment rendered, Martin Slough could not have brought, an action himself. If he is not made a party to the suit, I can see no reason why he could not maintain a second action against the company. It could not be said, if he had lived and brought an action upon the insurance policy, it could not have been said by the insurance company that he was barred by reason of a former judgment, if he had not been a party to the suit. It would not be res acljudicata.
There is another case cited by counsel which they say is in point, reported in the 23 Circuit Court Reports, at page 191, entitled Marine Insurance Company v. Walsh-Upstill Coal Co. In discussing that case found on page 198 we find this language:
“From these and numerous other authorities, it seems clear that the plaintiff here might take out a policy upon property not owned by it, though simply acting as agents for the owner, the policy running to it as agent and the company be bound by such policy. The language of this contract as already quoted, speaks of the property as belonging to the plaintiff and as agents. Surely the words ‘ as agents ’ were sufficient;' to notify the defendant that the plaintiff had a principal for whom it was agent, or might act in taking out insurance, and that so acting for such principal, the insurance was for the benefit of such principal, and so long as the defendant made no inquiry as to who was *62 such principal, it can not complain that the principal was not disclosed to it.
“It is complained on the part of the defendant that the court erred in its charge to the jury. The court said, among other things:
“If you find that the coal mentioned in the petition.was the property of the R. E. Elmore Company from and after the time it was placed upon the steamer ‘Egyptian’; that prior to or at the time of such shipment the said the R. E. Elmore Company requested the plaintiff, as its agent, to insure said coal for the benefit of said the R. E. Elmore Company; that plaintiff reported said shipment to the defendant’s Cleveland agents on November 29, 1897, and that defendant’s said agents, upon receiving such report, signed their firm name opposite the entry of such report, in the plaintiff’s policy book in which insurance under said policy was regularly and properly entered and endorsed — then I charge you that said cargó was regularly and properly insured by the defendant in favor of, and in the name of the plaintiff as agent of the R. E. Elmore Company, and, in that event, if you find the other facts set forth in the petition in favor of the plaintiff, then the plaintiff is entitled to recover in this action as agent for the R. E. Elmore Company the value of this coal, that is, its value on board the vessel at Cleveland, November 29, 1897.”
This was held to be not error. But this action was brought by the person named in the policy, and he is named as agent, and he brought his action in the name of the real owner of the property, and therefore sued in the name of the real party in interest. But that is not the case before us. Mrs. Slough does not sue on behalf of Martin Slough, or on behalf of his estate; she seeks to recover a personal judgment against the defendant in this case.
Counsel cite authorities tending to support the claim that it makes no difference whether she was named individually in the policy or as trustee or guardian; that question does not really concern us, because it may be conceded that, on the trial, she should be permitted to show that she stated to the agent at the time that she was not the owner of the property, but that she was simply a trustee of the property, as guardian of her husband, and maintain an a'ction provided the relationship of guardian and ward still existed. It is not a question of the language of the policy, and her relations to the owner of the property; it is simply a question of her bringing the action in the capacity in *63 which, she brings it; that is, as owner. It seems clear to the court that she can not bring-this action and recover in her own name. She has no interest in it, and had none at the time that the action was brought, in any sense. She owned no interest in it, and is not charged with the possession of it. She was no longer, guardian of her husband, and if he were still living — and I do not reeeollect whether the testimony shows that he was then living or whether he died before the suit was brought — but if he was living, it was a right of action that he had against the company; and I can not see now that there would be any objection to the real party bringing the action and alleging the facts to show that he was entitled to recover under the policy, and that the policy was taken out -to cover his interest in the property by his representative at the time; and that, if there was any money due on account .of the loss of the property, that it was due to him; or, on the other hand, if he was deceased at that time, the same might be done by his administrator.
There is only one other question: whether this is a joint contract, and whether a separate action can be had. There are no authorities cited. The only authority that I have is my own individual judgment.
By Edward Kibler: I have an authority I would like to submit. It -is the 48 O. S., page 534:
“1. A provision in a policy of fire insurance, to the effect that a sale or transfer of the property insured shall forfeit the policy, does not become operative to avoid the policy, unless the entire interest of the assured in the property insured is sold or transferred. (P. 539.)
“2. If the property insured consists of the stock of goods of a merchant doing business alone, the taking in by him of a partner in the business is not such a sale or transfer by him of his entire interest in the property as will avoid the policy. (P. 540.)
“3. Where the policy has not been assigned or transferred, and the property thus insured is destroyed or damaged by fire after the partnership had been formed and had assumed the management of the business, the assured may maintain an action on the policy in his own name to recover the damages sustained by him on account of the injury done to his share of the property. ’ ’ (P. 541.)
*64 The Court: It does not hold that each party might maintain a separate action for his interest. A had insured the whole property, it seems, under that decision. He sold a half interest to B, and the property was destroyed by fire. It was held that he might maintain an action to recover one-half of-the value of the property.
By Edward Kibler: In proportion to his undivided inter- . est at the time of the fire.
The Court: There was no joint contract. That would be quite different from holding that his assignee or transferee and he, both, could maintain separate actions.
By Edward Kibler: There hadn’t been any transfer.
The Court: It seems that, to hold that there could be separate actions maintained, would be in violation of the provision of the law providing against separating causes of action. There is nothing to indicate the interest that each had in the property, and, for all we know, an action may still be maintained by the parties, joining the principal parties who had the right to bring the action. For all we know there is still an administrator of the estate of Martin Slough, and this belongs to his estate, and he and - the plaintiff join in maintaining an action against the insurance company, to recover the whole amount of loss upon the policy.
If we were to hold that Nessley might proceed and recover iu this case the one-third, and that an action might be maintained by Martin -Slough — that is separating the causes of action into two.
It is so clear to the court that I am correct, I think the motion ought to be sustained.
By Edward Kibler: I would like to have the record show that, after the court announced its holding, that we made a motion that the ease proceed, so far as Arlington C. Nessley’s interest in the property is concerned, before the court makes any direction to the jury.
The Court: It may show that.
By Edward Kibler: And that is refused and exceptions by the plaintiff to the direction of the court.
The Court: Yes, sir. That may be shown — all of the matters that you wish the record to show.